UNITED STATES OF AMERICA,

v.

Mike **PEREZ.**

No. CR. A. 94–192–1.
No. CIV. A. 00–4995.

United States District Court,
E.D. Pennsylvania.

July 31, 2001.

Karl K. Lunkenheimer, Roberta Benjamin, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

Mark E. Cedrone, Carroll & Cedrone, Philadelphia, PA, Mike Perez, Minersville, PA, for Defendant.

### *MEMORANDUM AND ORDER*

HUTTON, District Judge.

Currently before the Court is the Movant Mike Perez's Supplement to His Previously Filed § 2255 Petition (Docket No. 502), the Government's Response to Movant's Petition for Relief Under 28 U.S.C.

§ 2255 (Docket No. 506), and the Defendant's Reply to Government's Response to Movant's Petition for Relief Under 28 U.S.C. § 2255 (Docket No. 516).

## I. *FACTUAL BACKGROUND*

On May 3, 1994, Mike Perez (Petitioner) was indicted for conspiracy to distribute cocaine (Count 1), distribution of cocaine (Counts 2, 3, and 4), unlawful use of a telephone (Counts 7–21), conducting financial transactions involving proceeds of unlawful activity (Count 23), and criminal forfeiture (Count 24). Ultimately, the Petitioner was tried on Counts 1, 3, 10, 11, 14, 15, and 23 of the indictment in a jury trial commencing on May 6, 1996. On November 20, 1997, following a guilty verdict, a sentencing hearing was held. As a result, the Court sentenced the Petitioner to a term of imprisonment of 360 months, a five year term of supervised release, a fine of $5,000, and a special assessment of $350.

Following the imposition of sentence, the Petitioner filed an appeal of his conviction and sentence to the United States Court of Appeals for the Third Circuit. On October 26, 1998, the Judgment of the Court was affirmed. On October 4, 1999, Petitioner's Writ of Certiorari to the United States Supreme Court was denied. On January 10, 2000, the Supreme Court denied the Petitioner's request for a rehearing. As a result, the Petitioner filed a motion pursuant to 28 U.S.C. § 2255 raising thirteen grounds for relief.

## II. *DISCUSSION*

■ A prisoner who is in custody pursuant to a sentence imposed by a federal court who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (West 2001). The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under section 2255. *See Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989). In exercising that discretion, the court must determine whether the petitioner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir.1994).

Prior to addressing the merits of the petitioner's claims, the court should consider if they are procedurally barred. *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir.1993). A petitioner under section 2255 is procedurally barred from bringing any claims on collateral review which could have been, but were not, raised on direct review. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998)(exception to procedural default rule for claims that could not be presented without further factual development); *United States v. Biberfeld*, 957 F.2d 98, 104 (3d Cir.1992). Once claims have been procedurally defaulted, the petitioner can only overcome the procedural bar by showing "cause" for the default and "prejudice" from the alleged error. *See Biberfeld*, 957 F.2d at 104 (stating "cause and prejudice" standard). In this context, "cause" consists of "something external to the petitioner, something that cannot be fairly attributable to him," and "prejudice" means that the alleged error "worked to [the petitioner's] actual and substantial disadvantage." *See Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)(defining "cause"); *United States v. Frady*, 456 U.S.

152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)(defining "prejudice").

The Petitioner's first claim asserts that his counsel was ineffective for failing to raise the remaining twelve claims at trial or on appeal in violation of his sixth amendment right to reasonably effective assistance of counsel. *See* U.S. Const. amend. VI. Normally, claims that were never raised on direct appeal are considered barred from collateral review. However, because an ineffective assistance of counsel claim often relies on matters outside of the factual record on appeal and the defendant is often represented on appeal by the same counsel as at trial, courts have held that "an ineffective assistance claim which was not raised on direct appeal is not deemed procedurally defaulted for purposes of habeas review." *United States v. Garth*, 188 F.3d 99, 107 n. 11 (3d Cir.1999)(citing *United States v. DeRewal*, 10 F.3d 100, 103 (3d Cir.1993)). In addition, the Petitioner raises twelve independent grounds for relief. *See* Pet'r Supp. to § 2255 Mot. at 1.

Other than the claims of ineffective assistance of counsel, the Petitioner does not argue that cause and prejudice exists to excuse any procedural default. A claim of ineffective assistance of counsel is governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

In *Strickland*, the Supreme Court stated that an ineffective assistance of counsel claim requires the defendant to show that their counsel's performance was defective and that the deficient performance prejudiced the defense. *See id.*, 104 S.Ct. at 2064. Counsel's performance will be mea-

sured against a standard of reasonableness. In analyzing that performance, the court should make "every effort ... to eliminate the distorting effects of hindsight," and determine whether "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *See id.* at 690, 104 S.Ct. at 2066. Once it is determined that counsel's performance was deficient, the court must determine if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Only after both prongs of the analysis have been met will the petitioner have asserted a successful ineffective assistance of counsel claim. Because the Petitioner has asserted ineffective assistance for failure to raise the grounds for relief presented in his motion, every ground can avoid the procedural bar that accompanies a failure to argue an issue on direct appeal if the *Strickland* test is satisfied. *See* Pet'r Supp. to § 2255 Mot. at 1.

### A. *Duty to Investigate (Grounds 2 and 3)* [1]

 The Petitioner's first claim of ineffective assistance of counsel is based upon his contention that his trial counsel failed to investigate or challenge the legal sufficiency of the government wiretaps which resulted in the bulk of the evidence against the Petitioner. *See* Pet'r Supp. to § 2255 Mot. at 2–3. The Petitioner asserts that trial counsel's misunderstanding as to the legal differences regarding the

---

1. Ground No. 1 was the overall claim of ineffective assistance of counsel. However, Ground No. 1 contained no specific allegation of ineffectiveness other than a reference to the remaining grounds. Therefore, the Court's analysis begins with Ground 2. In addition, the Court will group some of the grounds together for ease of discussion.

treatment of cordless phones as opposed to cellular phones led to his lack of investigation in this matter. *See* Pet'r Supp. to § 2255 Mot. at 4. The argument continues that if an investigation was conducted it would have "likely resulted in a viable attack of the court authorized wiretaps." *See* Pet'r Supp. to § 2255 Mot. at 4. The Petitioner's confidence apparently flows from his belief that Special Agent O'Neill of the Federal Bureau of Investigation (FBI) testified that the wiretaps in the Petitioner's case resulted directly from drug related conversations between the Petitioner and Felix Perez, but Felix Perez submitted an affidavit stating that he never was involved in any drug transactions with the Petitioner. *See* Pet'r Supp. to § 2255 Mot. at 4–6.

■ "[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." *United States v. Kauffman,* 109 F.3d 186, 190 (3d Cir.1997). In the instant case, there is no evidence as to the extent of the investigation conducted by trial counsel. In addition, it is uncertain whether there was any cause to conduct an investigation into the propriety of the wiretaps. However, there is extensive evidence in the record of Petitioner's counsel's knowledge of the process the authorities went through in obtaining a warrant on the Petitioner's cellular phone.

FBI Special Agent O'Neill testified at the trial and discussed the obtaining of authorizations for wiretaps. On cross-examination, Special Agent O'Neill testified that the FBI obtained authorization for a wiretap on the phone of Felix Perez based upon information that Felix Perez was a drug dealer as well as pen register information and possibly surveillances. *See* May 8, 1996 Tr. Transcript at 75:2–77:1. Special Agent O'Neill then went on to testify that in the course of monitoring the wiretap on Felix Perez's phone, the authorities intercepted a drug-related conversation involving the Petitioner. *See* May 8, 1996 Tr. Transcript at 77:3–78:4. After the interception of the conversation, a confidential informant, Roberto Gonzalez, identified the voice in the phone conversation as that of Mike Perez. *See* May 8, 1996 Tr. Transcript at 77:3–78:4. Armed with the taped conversation and the voice identification, the FBI received authorization to place a pen register on the telephone of the Petitioner. *See* May 8, 1996 Tr. Transcript at 81:8–82–7. An examination of the pen register revealed that three of the prior intercepted drug-related phone conversations were actually made from the cellular phone which belonged to the Petitioner. *See* May 8, 1996 Tr. Transcript at 86:1–7. After receiving information from two cooperating witnesses that the cellular phone was that of the Petitioner, the FBI received authorization from a judge to place a wiretap on the Petitioner's cellular phone. *See* May 8, 1996 Tr. Transcript at 86:15–87:25. Based upon information obtained from the wiretap of the cellular phone and surveillance, the FBI obtained authorization to wiretap the land line at Fabiola Echeverry's residence on Decatur Street in Philadelphia. *See* May 8, 1996 Tr. Transcript at 87:23–90:7. The steps taken by law enforcement to secure wiretap authorizations are appropriate.

The Petitioner does not point to specific deficiencies with the procedures utilized by law enforcement as discussed above. There is no discussion of case law which, if analogized to the facts before the Court, would merit striking down the Court authorized wiretaps and any evidence which flowed from them. Instead, the Petitioner encourages the Court to speculate that if an investigation was conducted it "would have very likely resulted in a viable attack of the Court authorized wiretaps." *See*

Pet'r Supp. to § 2255 Mot. at 4. There is nothing in the record to support this contention.

The only specific objection made by the Petitioner is that the original basis for the wiretap was an incorrect statement that the Petitioner was engaged in a drug conversation with Felix Perez. *See* Pet'r Supp. to § 2255 Mot. at 4. Felix Perez asserts, via affidavit, that he never engaged in drug conversations with the Petitioner. *See* Pet'r Supp. to § 2255 Mot. at 4. However, this is an incorrect statement of the facts that led to the authorization of the wiretap on the Petitioner's cellular phone. Special Agent O'Neill testified that a drug-related conversation involving the Petitioner was intercepted by authorities who were monitoring the phone of Felix Perez. *See* May 8, 1996 Tr. Transcript at 77:25–78:4. However, Special Agent O'Neill testified that the conversation took place between the Petitioner and Oscar Caberrera, not Felix Perez. *See* May 8, 1996 Tr. Transcript at 81:15–16. Therefore, the affidavit of Felix Perez does not impugn the legitimacy of the initial wiretap authorization.

Because Petitioner's trial counsel's cross-examination of Special Agent O'Neill revealed that trial counsel was well aware of the factual circumstances surrounding the issuance of the wiretap authorizations, the Court finds that the decision not to investigate the validity of the wiretap authorizations does not fall outside of the wide range of professionally competent assistance. Even if the Court were to find that counsel should have investigated the issue further, the Court finds that the failure to do so did not prejudice the Petitioner because all of the record evidence indicates that the wiretaps were properly conducted pursuant to Court authorization. Finally, the Court finds that the failure of previous counsel to pursue an investigation

into the affidavit of Felix Perez was not ineffective at all in light of the fact that it does nothing to contradict the validity of the authorizations at issue.

For the foregoing reasons, the Court finds that the Petitioner's grounds for relief numbered two and three do not entitle him to relief.

### B. *Newly Discovered Evidence (Ground 4).*

■ The Petitioner next contends that his trial and appellate counsel were ineffective for failing to file a motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33. *See* Pet'r Supp. to § 2255 Mot. at 7. This contention stems from three affidavits or statements received by the Petitioner subsequent to his trial which undermined the credibility and factual positions taken by several key government witnesses. *See* Pet'r Supp. to § 2255 Mot. at 7. The affidavits were obtained from Juan Hernandez (impugning the testimony of Ricardo Haines), William Cartagena (contradicting the testimony of Fabiola Escheveroy), and Nicholas Delgado (impeaching himself). *See* Pet'r Supp. to § 2255 Mot. at 7. The Petitioner believes that this information would have had a serious impact on his conviction and sentencing and should have been explored more fully by counsel. *See* Pet'r Supp. to § 2255 Mot. at 8.

■ A trial court will not order a new trial on the basis of newly discovered evidence if the evidence is merely cumulative or impeaching unless it is likely to result in an acquittal. *See Government of the Virgin Islands v. Lima*, 774 F.2d 1245, 1250 (3d Cir.1985)(enumerating five requirements that must be met for new trial); *see also United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir.1985)("evidence . . . was merely impeaching and almost certainly would not produce an acquittal"). All of

the testimony proffered by these late witnesses is impeachment evidence and therefore, it is very unlikely that it would support a motion pursuant to Rule 33. The Court cannot find that Petitioner's counsel was ineffective for failing to pursue arguments supported only by impeachment evidence.

Even if counsel was ineffective for failing to raise these arguments, the Court finds that a failure to investigate these leads would have had no prejudicial effect on the Petitioner because the information would not have produced a successful motion under Rule 33. As a preliminary matter, Nicholas Delgado never testified at trial. When Delgado's name was mentioned, Special Agent O'Neill testified that he was a liar who had lied to the FBI on a regular basis. *See* May 8, 1996 Tr. Transcript at 87:3–7. It is not conceivable that any additional information on Nicholas Delgado would have had any impact on the trial. In addition, Ms. Echeverry and Mr. Haines were witnesses who received plea agreements in exchange for their testimony. *See* May 8, 1996 Tr. Transcript at 3–10 (Echeverry); *see also* May 13, 1996 Tr. Transcript at 6–7 (Haines). The Court's instructions to the jury included a charge that "a witness who hopes to gain favorable treatment in his or her own case, may have a reason to make false statements because he or she wants to strike a good bargain with the Government. So, while a witness of that kind may be entirely truthful when testifying, you should consider such individual's testimony with caution." *See* May 14, 1996 Tr. Transcript at 7–47. With such a cautionary instruction, it is clear that the jury was looking at their critically at their testimony. In addition, they were extensively cross-examined and their credibility called into question regarding their roles in the drug enterprise.

*See* May 9, 1996 Tr. Transcript at 4–36:19–4–62:13 (Echeverry); *see also* May 13, 1996 Tr. Transcript at 6–91:24–6–108:5(Haines). It was not the credibility of these witnesses that resulted in the Petitioner's conviction, it was that their testimony was largely corroborated by audio-tapes. It is not reasonable to expect that further impeachment would have made a difference in the jury's evaluation of their testimony.

For the foregoing reasons, the Court finds that the Petitioner's ground for relief number four does not entitle him to relief.

### C. *Failure to Rebut Guideline Calcualtion (Ground 6 and 7)* [2].

■ The Petitioner next attacks the performance of his trial and appellate counsel arguing that they failed to develop and present evidence which would have rebutted much of the evidence the Court relied upon in making its weight determinations for guideline calculations and as a result, the factual determinations relied upon by the Court at sentencing were grossly erroneous. *See* Pet'r Supp. to § 2255 Mot. at 8. The Petitioner reasserts his position that he was not the major drug dealer that the witnesses suggested. *See* Pet'r Supp. to § 2255 Mot. at 8. This contention was clearly rejected by the jury. The Petitioner asserts that the "new evidence" regarding Ms. Echeveroy's role as the head of a large scale drug operation would have supported his theory. However, this information was before the jury because it was elicited by Petitioner's counsel during cross-examination of Mr. Haines. *See* May 13, 1996 Tr. Transcript at 6–92. Because the Court finds that the issues were properly presented to the jury and the "new evidence" would have no impact on that result, the Court finds that

---

**2.** The Petitioner's motion does not contain a ground for relief numbered 5.

the Petitioner's counsel's performance was not deficient in failing to further develop these lines of inquiry. In addition, because the Court rejects the Petitioner's contentions, the Court finds that the factual findings on which the Court's sentence were based were not grossly erroneous.

For the foregoing reasons, the Court finds that the Petitioner's grounds for relief numbered six and seven do not entitle him to relief.

### D. Plea Bargaining Discussions (Ground 8).

■ The Petitioner contends that his trial counsel was ineffective because he never fully discussed plea bargaining opportunities with him. See Pet'r Supp. to § 2255 Mot. at 8–12. Clearly, the record is devoid of any information on the content of conversations between counsel and the Petitioner. For that reason, the Government recommends that an evidentiary hearing be held. Because the Petitioner's allegations, if proven, could entitle him to relief, the Court will grant the Petitioner an evidentiary hearing on this claim. The Court, however, will reserve analysis under *Strickland* until such time as the Court can make a meaningful determination upon the facts adduced at the evidentiary hearing.

### E. Apprendi Claims (Grounds 9 and 10).

The Petitioner makes two claims which rely on the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)decided on June 26, 2000. 120 S.Ct. at 2348. *See* Pet'r Supp. to § 2255 Mot. at 13–15. This Court has already decided that *Apprendi* announced a new rule of law which is not retroactive to cases on collateral review. *See United States v. Rodriguez*, 153 F.Supp.2d 590, 597 (E.D.Pa.2001); *see also*

*United States v. Gibbs*, 125 F.Supp.2d 700, 707 n. 10 (listing cases that have decided that *Apprendi* is not retroactive to cases on collateral review). In the instant case, the Petitioner's conviction became final on February 21, 1999. Therefore, even if the Petitioner's facts implicated the ruling of *Apprendi*, the Petitioner would be unable to gain relief. The Petitioner mistakenly asserts that this Court's ruling in *Rodriguez* relied on *Gibbs* in coming to its conclusion. However, in *Rodriguez*, this Court adopted and approved of the reasoning put forth by the Court in *Gibbs* and the six other concurring courts noted in that opinion. *See Rodriguez*, at 597. The Court stands by that analysis.

For the foregoing reasons, the Court finds that the Petitioner's grounds for relief numbered nine and ten do not entitle him to relief.

### F. Competence (Ground 11).

■ The Petitioner next claims that he is entitled to a new trial based upon the fact that during his trial he was severely addicted to heroin and unable to appreciate the proceedings against him. However, this issue was addressed pre-trial. *See* Pet'r Supp. to § 2255 Mot. at 11. The Government moved for a competency hearing and the Petitioner's attorney opposed it. Clearly this issue was contemplated by the Petitioner and his attorney and rejected. As a preliminary matter, the Court need not decide whether Petitioner's counsel was ineffective for failing to argue that Petitioner was incompetent because it is irrelevant. The Court conducted a competency hearing over defense counsel's objection and the Petitioner was found to be competent. Therefore, even if the Petitioner's counsel had argued he was incompetent, the independent evidence would have resulted in a finding of competence.

For the foregoing reasons, the Court finds that the Petitioner's ground for relief number eleven does not entitle him to relief because the issue of competency was adjudicated prior to trial.

### G. Faulty Indictment Regarding Count 11 (Ground 12)[3].

■ The Petitioner contends that count 11 of the indictment must be vacated because the underlying predicate act charged in that count was shown to be false. *See* Pet'r Supp. to § 2255 Mot. at 16. This contention hinges on the language in the indictment which states that "on or about March 3rd, 1993, at approximately 12:33 p.m." the Petitioner asked Isaac Bonilla to "sell" him cocaine. *See* Pet'r Supp. to § 2255 Mot. at 17. In their response, the Government correctly points out that the exact terminology is irrelevant. Count 11 charged the Petitioner with using a communication device in furtherance of the drug conspiracy contained in Count 1 of the indictment. The Petitioner was found guilty of Count 1 and Mr. Bonilla (Rivera) testified that the telephone conversation that took place on March 3, 1993 involved discussions of drugs. Whether or not the Petitioner was a "buyer" or "seller" is irrelevant in determining guilt on conspiracy to use a communications device in furtherance of the drug conspiracy. As a result, Petitioner's counsel's performance cannot be considered deficient for failing to raise this issue. In addition, if it was raised, it would have been rejected. Therefore, there was no prejudice to the Petitioner.

For the foregoing reasons, the Court finds that the Petitioner's ground for relief number twelve as it relates to the accuracy

of Count 11 of the indictment does not entitle him to relief.

### H. The Court's Jury Charge (Grounds 12, and 14).

■ The Petitioner's makes several objection to the instructions given to the jury by the Court. First, the Petitioner asserts that the instructions regarding Counts 10, 11, 14, and 15 were incorrect in that they allowed both conspiracy and distribution to be used as the felony upon which to base a finding of guilt as to those counts while the indictment charges only conspiracy as the proper predicate felony. *See* Pet'r Supp. to § 2255 Mot. at 18. In addition, the Petitioner contends that the Court's charge regarding conspiracy was misplaced and confusing. *See* Pet'r Supp. to § 2255 Mot. at 22–23. A reading of the complete charge, however, reveals that the instruction given to the jury was proper.

■ A jury instruction will be the basis for collateral relief only when " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)(quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)). " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Id.* (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). In the Court's instructions to the jury, the Court made clear that to be convicted under Counts 10, 11, 14, and 15, the jury would have to find that the "telephone was used in committing or caused to be used in facilitating the commission of the drug felony specified in

---

**3.** Ground number 12 actually contains two separate contentions. The Court will address these two contentions separately.

each count." *See* May 14, 1996 Tr. Transcript at 7–95:14–16. The Petitioner's objection ignores this instruction to the jury and the unequivocal nature in which it explains that the jury must refer to the charges in each count. When the jury referred to each count, it became clear that the only conduct charged in terms of using telephone communications was the conspiracy count. *See* May 14, 1996 Tr. Transcript at 7–82:3–7–84:9. In addition, the Petitioner has contested that portion of the Court's charge where the Court states that "[i]f you find that the conspiracy succeeded in accomplishing its unlawful plans, the defendants may be found guilty of [substantive offenses] even though they did not actually participate in the act constituting the offenses. Therefore, if you find the defendant is guilty of conspiracy as charged in count 1, you may also find the defendant guilty of the substantive offenses charged in some of the other counts in the indictment." The Petitioner argues that this instruction was confusing because some of the charges against him were not listed as objects of the conspiracy. However, the Petitioner ignores the remaining language of that portion of the charge which states: "[t]o do so, you must find that the Government has proved beyond a reasonable doubt, ... the substantive offenses defined in those substantive counts were committed pursuant to the conspiracy." *See* May 14, 1996 Tr. Transcript at 7–91:19–24. The Court finds that viewed as a whole, these instructions were completely proper. The Court finds that Petitioner's counsel was not deficient for failing to raise this issue. In addition, the Court finds that the instruction to the jury resulted in no prejudice to the Petitioner.

For the foregoing reasons, the Court finds that the Petitioner's grounds for relief numbered twelve and fourteen do not entitle him to relief.

## I. *The Verdict Forms (Ground 13).*

 The final contention raised by the Petitioner is that although Count 1 of the indictment alleged a conspiracy in violation of 21 U.S.C. § 846, the verdict sheet incorrectly cited the relevant statutory provisions as 21 U.S.C. § 841(a)(1)(A) and 21 U.S.C. § 841(b)(1)(A)(2). *See* Pet'r Supp. to § 2255 Mot. at 21. However, the verdict form correctly asked the jury to find guilt or innocence as to whether the Petitioner "did knowingly and intentionally conspire, combine, and agree together and with others, to distribute in excess of five kilograms of ... cocaine." Combined with the Court's instructions regarding conspiracy, any error which resulted from a miscitation to a statute is most certainly harmless. Certainly, the Petitioner cannot sustain an ineffective assistance of counsel claim on such an allegation. Even if he could, the Court finds that the Petitioner was not prejudiced by the error on the verdict form.

For the foregoing reasons, the Court finds that the Petitioner's ground for relief number thirteen does not entitle him to relief.

An appropriate Order follows.

### *ORDER*

AND NOW, this 31st day of July, 2001, upon consideration of the Movant Mike Perez's Supplement to His Previously Filed § 2255 Petition (Docket No. 502), the Government's Response to Movant's Petition for Relief Under 28 U.S.C. § 2255 (Docket No. 506), and the Defendant's Reply to Government's Response to Movant's Petition for Relief Under 28 U.S.C. § 2255 (Docket No. 516), IT IS HEREBY ORDERED that:

1. the Court shall hold an **Evidentiary Hearing** regarding Ground 8 of the Petitioner's Motion on **OCTOBER**

**12, 2001,** at 10:00 a.m. in Courtroom 9A, 601 Market Street, Philadelphia, Pennsylvania;

2. Grounds 1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 13, and 14 are **DISMISSED WITH PREJUDICE;** and

3. a certificate of appealability is not granted as to Grounds 1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 13, and 14 because Petitioner has not made a substantial showing of the denial of a Constitutional right.